**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
CRYSTAL H.,                    )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:23CV733
                               )
MARTIN J. O'MALLEY,            )
Commissioner of Social         )
Security,                      )
                               )
          Defendant.¹          )
```

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Crystal H., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief); Docket Entry 13 (Plaintiff's Reply)). For the reasons that

---

¹ On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

follow, the Court will enter judgment for Plaintiff remanding this case for further administrative proceedings.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 223-20), alleging a disability onset date of November 1, 2018 (see Tr. 224). Upon denial of that application initially (Tr. 48-64, 83-86) and on reconsideration (Tr. 65-82, 90-98), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 99-100). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 28-47.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 9-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 210-12, 331-33), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

Plaintiff then sought judicial review in this Court, see Hall v. Kijakazi, No. 1:21CV966, Docket Entry 1 (M.D.N.C. Dec. 21, 2021), after which the Court granted the Commissioner's consent motion to remand the case under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, see id., Docket Entries 17, 18 (M.D.N.C. Aug. 15, 2022). In turn, the Appeals Council entered an order of remand to the ALJ (Tr. 1029-35), instructing the ALJ to

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

2

1) "further consider[ ] whether a cane is medically necessary and, if so, under what circumstances the cane is needed" (Tr. 1032); 2) "provide a sufficient evaluation of [Plaintiff]'s alleged fibromyalgia, as required by Social Security Ruling 12-2p[, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (July 25, 2012) ('SSR 12-2p')]" (id.); 3) "[g]ive further consideration to [Plaintiff]'s maximum residual functional capacity" (id.); and 4) "[i]f warranted by the expanded record, obtain supplemental evidence from a [VE]" (Tr. 1033).

The ALJ held a second hearing, attended by Plaintiff, her attorney, and a different VE (Tr. 1008-26), and entered a new decision denying Plaintiff's claim for benefits (Tr. 981-1007). In light of the Court's previous remand of the case, Plaintiff opted to forego review with the Appeals Council and initiated this instant action for judicial review, thus rendering the ALJ's decision the Commissioner's final decision for purposes of judicial review.[3]

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

---

[3] "When a case is remanded by a district court and, in turn, to an ALJ for further proceedings, the decision of the ALJ constitutes the final decision of the Commissioner unless the Appeals Council thereafter assumes jurisdiction (1) at the claimant's request, or, (2) absent such request, in its discretion within 60 days after the ALJ's decision. See 20 C.F.R. § 404.984(a)-(d). Here, [Plaintiff] did not request review of the ALJ's decision by the Appeals Council, and the Appeals Council chose not to exercise jurisdiction; hence, [Plaintiff] returned directly to th[is C]ourt." Jackson v. Astrue, No. 09CV1290, 2010 WL 3777732, at *1 (E.D.N.Y. Sept. 21, 2010) (unpublished).

3

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since November 1, 2018, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: osteoarthritis status post left ankle fracture, fibromyalgia, diabetes mellitus, obesity, thyroid disorder, depression, bipolar disorder, anxiety, obsessive-compulsive disorder (OCD), and post-traumatic stress disorder (PTSD).

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work . . . with no exposure to hazards such as unprotected heights or dangerous moving machinery. She requires a cane for any standing or walking. Mentally, she can understand and remember simple instructions; maintain concentration for simple tasks; adapt to routine changes in a work setting; and have no more than occasional interaction with the public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. [C]onsidering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

4

> 11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from November 1, 2018, through the date of this decision.

(Tr. 986-1000 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court will remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting

5

Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]."  Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)."  Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

6

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A))._[4]_ "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

7

other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

## B. Assignment of Error

In Plaintiff's first and only issue on review, she maintains that "[t]he ALJ erred in his evaluation of Plaintiff's fibromyalgia by failing to apply the correct legal standard." (Docket Entry 11 at 5 (bold font and block formatting omitted); see also Docket Entry 13 at 1-2.) In particular, Plaintiff argues that "[t]he most significant error made by the ALJ in evaluating [Plaintiff]'s fibromyalgia is [the ALJ's] reliance upon the objective evidence or

___

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

9

normal examination findings to validate the degree of pain that [Plaintiff] is experiencing." (Docket Entry 11 at 6; see also id. (providing examples of ALJ's reliance on objective evidence in his evaluation of Plaintiff's fibromyalgia (citing Tr. 991-92, 996-97)).) According to Plaintiff, the United States Court of Appeals for the Fourth Circuit has held that "such normal examination findings do not preclude disabling symptoms from fibromyalgia and cannot be required to determine the severity of a claimant's fibromyalgia." (Id. at 7 (citing Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020), for the proposition that "'ALJs may not rely on objective medical evidence (or the lack thereof) - even as one of multiple facts - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia'" (emphasis omitted)).) Plaintiff further faults the ALJ for "'fail[ing] to appreciate the waxing and waning nature of fibromyalgia and to consider the longitudinal record' as a whole." (Id. at 8 (quoting Arakas, 983 F.3d at 101).) Plaintiff's contentions regarding the ALJ's improper reliance on objective medical evidence to discount Plaintiff's fibromyalgia-related subjective symptom reports in violation of Arakas have merit and warrant remand.

In Arakas, the Fourth Circuit deemed fibromyalgia a "unique" disease, Arakas, 983 F.3d at 97, with "symptoms [that] are entirely subjective," id. at 96, and noted that "physical examinations of

10

patients with fibromyalgia will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions," id. (brackets omitted).  The Fourth Circuit thus held that "ALJs may not rely on objective medical evidence (or the lack thereof) – <u>even as just one of multiple medical factors</u> – to discount a claimant's subjective complaints regarding symptoms of fibromyalgia," because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease," id. at 97 (emphasis added).

Here, at step two of the SEP, the ALJ found that Plaintiff's fibromyalgia constituted a severe impairment, because it "significantly limit[ed her] ability to perform basic work activities" (Tr. 987), but found, at step three, that her fibromyalgia did not meet or medically equal the criteria of any of the Commissioner's listed impairments (see Tr. 987-88).[8]  As a

---

[8] In making that step three finding, the ALJ provided the following analysis:

> In keeping with the Order of the Appeals Council, the [ALJ] further considered [Plaintiff]'s allegation of fibromyalgia.  Pain management provider Janelle Grossman, N.P. observed that [Plaintiff] had at least 11 positive tender points on physical examination found bilaterally and both above and below the waist, consistent with the requirements of SSR 12-2p ([Tr. 402-03]).  Nurse Grossman also noted that testing had ruled out other pathology ([Tr. 410]), consistent with the requirements of SSR 12-2p, and she diagnosed [Plaintiff] with fibromyalgia ([Tr. 402-03]).  Therefore the [ALJ] finds that [Plaintiff] has a severe impairment of fibromyalgia consistent with the requirements of SSR 12-2p.

11

result, the ALJ proceeded to determine Plaintiff's RFC and, as part of that analysis, evaluated Plaintiff's subjective symptom reporting. (See Tr. 994-95.) In that regard, the ALJ acknowledged Plaintiff's testimony that "she [] has fibromyalgia with pain in her lower neck, shoulders, elbows, hips, knees, feet, and toes, and she has difficulty turning her head and reaching," as well as that "[s]he has pain in her hands up to her arms and elbows," "spends about 90 percent of her time during the day in a recliner," and "has trouble with memory and concentration." (Tr. 991.)

After summarizing Plaintiff's testimony, the ALJ expressly stated that Plaintiff's "<u>subjective allegations must be compared with the objective medical evidence of record</u>" (id. (emphasis added)), and did <u>not</u> indicate that he excluded his consideration of Plaintiff's fibromyalgia symptoms from that comparison with the "objective medical evidence of record" (id.). Consistent with that fact, the ALJ then provided the following evaluation of the record evidence relating to Plaintiff's fibromyalgia, which, as the underscored passages below make clear, included impermissible consideration of "normal" objective findings:

> The medical record shows that [Plaintiff] has a history of complaints of joint pain, body aches, fatigue, and difficulty sleeping and was diagnosed with <u>fibromyalgia</u>

---

(Tr. 987-88.) The ALJ thus complied (albeit at step three of the SEP) with the Appeals Council's remand order insofar as it directed him, as part of the step-two severity determination, to "provide a sufficient evaluation of [Plaintiff]'s alleged fibromyalgia, as required by Social Security Ruling 12-2p." (Tr. 1032.)

12

by rheumatology in 2014 ([Tr. 360, 363]). [Plaintiff] was seen by Mary-Margaret Martin, N.P., her primary care provider at Western Rockingham Family Medicine, in November 2018 around the time of the alleged onset date, and while [Plaintiff] had previously taken Neurontin and Lyrica, she reported that she had not been taking any medication for fibromyalgia for the last several years and instead was using essential oils, she had done well with this, and her pain had increased in the last two months with pain in her fingers and feet ([Tr. 360]). Nurse Martin gave [Plaintiff] a Depo-Medrol injection and prescribed a five-day course of prednisone ([Tr. 361]) followed by gabapentin (Neurontin), and [Plaintiff] reported that Neurontin was helping in January 2019 ([Tr. 363-64]). Nurse Martin observed tender points 'up and down' [Plaintiff]'s spinal column on examination and added duloxetine (Cymbalta) to her medication ([Tr. 364]). On March 13, 2019, [Plaintiff] was also seen by pain management provider Janelle Grossman, N.P. at Bethany Medical Center, and Nurse Grossman observed that [Plaintiff] had at least 11 positive tender points on physical examination found bilaterally and both above and below the waist, consistent with the requirements of SSR 12-2p ([Tr. 402-03]). Nurse Grossman also noted that testing had ruled out other pathology ([Tr. 410]), consistent with the requirements of SSR 12-2p, and Nurse Grossman diagnosed [Plaintiff] with fibromyalgia and prescribed Belbuca ([Tr. 402-03]). . . . Nurse Grossman also observed that [Plaintiff] <u>walked with a normal gait and had full range of motion with normal strength</u> ([Tr. 402-03]). On June 18, 2019, Nurse Grossman prescribed [Plaintiff] a cane ([Tr. 544, 860]). On September 13, 2019, [Plaintiff] reported that she did not feel like she was being helped with her pain, and Nurse Grossman observed [Plaintiff] to walk with an antalgic gait with the use of a cane ([Tr. 550]). On examination, [Plaintiff] had <u>4/5 strength in the right upper and right lower extremity and 5/5 strength in the left upper and left lower extremity, normal sensation throughout</u>, and impaired heel and toe walk, and Nurse Grossman continued [Plaintiff]'s [g]abapentin and restarted Baclofen ([Tr. 550-51]). Since that time, [Plaintiff] has continued follow-up for fibromyalgia with Nurse Martin every three months for medication management ([Tr. 554-84, 866-902, 1154-1290, 1408-1544, 1837-1972]), and Nurse Martin observed that [Plaintiff]'s gait was slow and steady with a cane in December 2020 ([Tr. 871]). In July 2021,

13

> [Plaintiff] reported that she did not take Ultram
> regularly and only took it as needed for pain ([Tr.
> 1157]). [Plaintiff] also reported in August 2021 that
> while she did not exercise, she was able to complete
> light tasks around her home ([Tr. 1530]). Though
> [Plaintiff] reported experiencing daily pain due to her
> fibromyalgia in January 2022 ([Tr. 1461]), she also
> reported that she had been walking daily ([id.]). The
> [ALJ] has accounted for [Plaintiff]'s fibromyalgia in
> limiting [her] to sedentary exertion with no concentrated
> [sic] exposure to hazards.

(Tr. 991-92 (emphasis added).)[9]

The ALJ then compounded his Arakas error by relying on normal objective findings to discount portions of the opinion evidence more restrictive than the RFC. In particular, the ALJ found the state agency medical consultants' "conclusion that [Plaintiff] has a severe impairment of fibromyalgia . . . consistent with the record overall and therefore persuasive" (Tr. 996 (emphasis added) (citing Tr. 53, 72)), but found the consultants' postural limitations to frequent balancing, stooping, kneeling, crouching,

---

[9] The ALJ ultimately "f[ound] that [Plaintiff]'s medically determinable impairments [including fibromyalgia] could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 994.) In support of that latter finding, the ALJ summarized the daily activities that Plaintiff described on a Function Report in April 2019 (id. (citing Tr. 256-58)), and then noted that, "[t]hough [Plaintiff] has fibromyalgia and subsequently received a prescription for a cane in 2019, Nurse Grossman observed in September 2019 that [Plaintiff] was able to walk with an antalgic gait with the use of a cane ([Tr. 550])" (Tr. 994 (emphasis added)). Although not argued by Plaintiff (see Docket Entries 11, 13), the Court does not understand how the fact that Plaintiff "walk[ed] with an antalgic gait with the use of a cane" (Tr. 994 (emphasis added) (citing Tr. 550)), absent further explanation not provided by the ALJ, demonstrates that Plaintiff's fibromyalgia symptoms did not warrant further limitations in the RFC, i.e., additional restrictions on Plaintiff's ability to stand and walk and/or postural limitations on climbing, balancing, stooping, kneeling, crouching, and crawling.

14

crawling, and climbing unpersuasive (see id. (citing Tr. 56-57, 75)), noting that those "limitations . . . [we]re inconsistent with [Plaintiff]'s regularly normal range of motion, reflexes, and sensation on examination" (id. (emphasis added)). Similarly, the ALJ found a Functional Capacity Evaluation ("FCE") "largely persuasive to the extent it support[ed] the conclusion that [Plaintiff wa]s limited to sedentary work with no exposure to hazards such as unprotected heights or dangerous moving machinery and use[d] a cane for any standing or walking" (Tr. 997 (citing Tr. 964-80)), but found, "[t]o the extent [the FCE] support[ed] additional limitations, it [wa]s inconsistent with the record overall and therefore unpersuasive," noting that, "[w]hile [Plaintiff] ha[d] multiple tender trigger points, her range of motion, reflexes, and sensation were otherwise normal on examination over the course of the relevant period" (id. (emphasis added)).

The Commissioner contends that "it was not error for the ALJ to consider the normal clinical findings such as normal strength, normal gait, and normal range of motion because he found other severe impairments, including osteoarthritis status post left ankle fracture and obesity." (Docket Entry 12 at 8 (internal parenthetical citation omitted) (citing Tr. 987, and Tanika W. v. Kijakazi, No. 1:22CV3691, 2023 WL 6050446, at *16 (D.S.C. Aug. 23, 2023) (unpublished), recommendation adopted sub nom. Wallace v.

15

Kijakazi, 2023 WL 6049982 (D.S.C. Sept. 15, 2023) (unpublished), for proposition that, "where [the] plaintiff had additional severe impairments often characterized by abnormal objective medical findings and the ALJ was not considering fibromyalgia in isolation, he did not err in considering objective medical evidence findings as one of multiple factors in evaluating [the p]laintiff's statements as to her other impairments").)

As Plaintiff argues, however, the ALJ here relied on normal objective findings "when obviously discussing **only** [Plaintiff]'s fibromyalgia at several points in the record." (Docket Entry 11 at 9 (emphasis in original) (citing Tr. 992, 996-97).) Moreover, the Commissioner's argument that the ALJ intended to analyze Plaintiff's symptoms arising from her fibromyalgia, osteoarthritis status post left ankle fracture, and obesity together (see Docket Entry 12 at 8) amounts to an impermissible post hoc rationalization, see Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting Commissioner's argument in part because it consisted of "a post[-]hoc rationalization" (citing Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012))); Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that

16

attempt to intuit what the [ALJ] may have been thinking." (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947))). Here, the ALJ 1) clearly indicated that he considered only Plaintiff's fibromyalgia in his paragraph discussing the evidence relating to Plaintiff's fibromyalgia treatment (see Tr. 991-92), as well as in his paragraph discounting the state agency medical consultants' postural limitations (see Tr. 996); and 2) cited only evidence relevant to fibromyalgia, i.e., Plaintiff's "multiple tender trigger points," as evidence supporting the FCE's restriction to sedentary work, before citing normal objective findings to explain why the evidence did not support any additional restrictions (Tr. 997 (emphasis added)). Accordingly, the facts of this case differ materially from those in Tanika W., where "the record supported, and the ALJ found, [the p]laintiff had additional severe and non-severe impairments often characterized by abnormal clinical exam and laboratory findings, including [degenerative disc disease], dysfunction of major joint (ankle), and carpal tunnel syndrome" and the ALJ did "not consider[] fibromyalgia in isolation," Tanika W., 2023 WL 6050446, at *16.[10]

---

[10] Even if the ALJ had considered Plaintiff's fibromyalgia together with her symptoms from her osteoarthritis status post left ankle fracture and obesity, this Court has held, contrary to Tanika W., that, where "the ALJ analyzed [the p]laintiff's [rheumatoid arthritis], fibromyalgia, and disc disease together and, in doing so, relied on objective medical evidence to discount [her] subjective symptom reporting, the Court c[ould] not rule out the possibility that the ALJ impermissibly relied on objective evidence, even as just one factor, in discounting the intensity, persistence, and limiting effects of [her] subjective complaints of fibromyalgia pain and fatigue in violation of Arakas," Cowan v.

17

As the foregoing analysis makes clear, the ALJ impermissibly relied on objective evidence, even as just one factor, in discounting the intensity, persistence, and limiting effects of Plaintiff's subjective complaints of fibromyalgia symptoms in violation of <u>Arakas</u>. See <u>Sandra P. v. Commissioner of Social Security</u>, No. 2:21CV127, 2022 WL 815463, at *9 (E.D. Va. Mar. 1, 2022) (unpublished) (finding "*Arakas* prohibited" ALJ's reliance on "intact strength and a normal gait[]" in assessing the plaintiff's "complaints of pain related to her fibromyalgia"), <u>recommendation adopted sub nom.</u> <u>Sandra P. v. Kijakazi</u>, 2022 WL 811295 (E.D. Va. Mar. 16, 2022) (unpublished); <u>India G. v. Kijakazi</u>, Civ. No. 20-1704, 2021 WL 3930430, at *1-2 (D. Md. Sept. 1, 2021) (unpublished) ("It is clear . . . that the ALJ used normal, objective evidence as a factor in discounting [the] plaintiff's subjective complaints about the limiting effects of her fibromyalgia. This is error after *Arakas*." (internal footnote and citation omitted)); <u>Bryson v. Berryhill</u>, No. 1:20CV169, 2021 WL 2517682, at *6 (W.D.N.C. June 18, 2021) (unpublished) ("[T]he ALJ erred when he applied the incorrect legal standard by considering objective evidence as a factor in evaluating [the p]laintiff's subjective symptoms of fibromyalgia, which essentially required [the p]laintiff to prove her subjective

---

<u>Kijakazi</u>, No. 1:21CV196, 2022 WL 3446078, at *8 (M.D.N.C. Aug. 17, 2022) (unpublished) (emphasis and internal parenthetical citations and quotation marks omitted), <u>recommendation adopted</u>, 2022 WL 17831951 (M.D.N.C. Sept. 21, 2022) (Osteen, J.).

18

symptoms of fibromyalgia with objective evidence."); <u>Midgett v. Saul</u>, No. 2:19CV46, 2021 WL 1230188, at *3 (E.D.N.C. Mar. 31, 2021) (unpublished) ("[T]he ALJ's opinion [] suggests an improper reliance upon clinical findings to discredit fibromyalgia complaints, contrary to the direction in *Arakas*.").

Moreover, the ALJ's error under <u>Arakas</u> does not qualify as harmless under the circumstances presented here. As an initial matter, the Commissioner did not develop any argument in brief that the ALJ's consideration of objective evidence in his analysis of Plaintiff's fibromyalgia amounted to harmless error. (<u>See</u> Docket Entry 12 at 3-9.) More significantly, the Court cannot, on the record before it, conclude that remand for the ALJ's proper consideration of Plaintiff's alleged fibromyalgia symptoms under <u>Arakas</u> would not lead to a favorable outcome in Plaintiff's claim. The ALJ already limited Plaintiff to the lowest exertional level of work, i.e., sedentary exertion, and included the use of a cane for standing and walking. (<u>See</u> Tr. 990.) If the ALJ's further (and proper) consideration of Plaintiff's fibromyalgia symptoms resulted in additional exertional, postural, manipulative, or environmental limitations, a VE (and not this Court) must determine the impact of those additional limitations on the sedentary occupational base, <u>see</u> Social Security Ruling 96-9p, <u>Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full</u>

19

Range of Sedentary Work, 1996 WL 374185, at * (July 2, 1996) ("SSR 96-9p") (recognizing that, "[u]nder the regulations, 'sedentary work' represents a significantly restricted range of work," that "[i]ndividuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations," and that, where (as here) an individual requires a cane "to aid in walking or standing[,] . . . it may be especially useful to consult a [VE] in order to make a judgment regarding the individual's ability to make an adjustment to other work").

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **VACATED**, and that this matter is **REMANDED** under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, to include re-evaluation of Plaintiff's subjective reports of fibromyalgia symptoms in compliance with Arakas.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

August 6, 2024